1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11    DANIEL TREVINO,                      )

12                    Plaintiff,           )        No. C 11-5622 CRB (PR)
                                           )
13          v.                             )        ORDER GRANTING MOTION
                                           )        TO DISMISS
14    M. MARTEL, Warden, et al.,           )
                                           )        (Docket # 36)
15                    Defendants.          )
      _____)

16

17          Plaintiff Daniel Trevino, a Native American prisoner, filed a pro se First

18    Amended Complaint (FAC) under 42 U.S.C. § 1983 alleging various violations

19    of his constitutional rights while incarcerated at San Quentin State Prison

20    (SQSP).  Specifically, plaintiff alleges that defendants, SQSP employees and

21    correctional officers, substantially burdened the practice of his Native American

22    religion by denying him the use of tobacco in religious rituals and by disciplining

23    him for possessing tobacco for religious purposes.  Plaintiff also alleges that

24    defendants retaliated against him for filing grievances regarding the denial of

25    tobacco by locking the gate to the religious sweat lodge and transferring him to

26    an undesirable part of the prison.  He further alleges that defendants have

27    subjected him to cruel and unusual punishment by intentionally placing him in

28    inhumane living conditions (including exposure to mold) and by risking his

safety by telling other inmates that the locking of the gate to the religious sweat lodge was plaintiff's fault.  On February 27, 2012, the court screened the complaint pursuant to 28 U.S.C. § 1915A and found plaintiff's claims cognizable.

Defendants now move for dismissal under Federal Rule of Civil Procedure 12(b) on the ground that plaintiff failed to properly exhaust available administrative remedies before filing suit, as required by 42 U.S.C. § 1997e(a).  Plaintiff filed a document entitled "objection" to defendants' motion, which the court construes to be his opposition.  Defendants filed a reply.  Plaintiff also filed an unsolicited surreply.

## DISCUSSION

### A.    Standard of Review

Nonexhaustion under 42 U.S.C. § 1997e(a) is an affirmative defense that should be treated as a matter of abatement and brought in an "unenumerated Rule 12(b) motion rather than [in] a motion for summary judgment."  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003) (citations omitted).  In deciding a motion to dismiss for failure to exhaust administrative remedies under § 1997e(a), the court may look beyond the pleadings and decide disputed issues of fact.  Id. at 1119-20.  If the court concludes that the prisoner has not exhausted California's prison administrative process, the proper remedy is dismissal without prejudice.  Id. at 1120.

### B.    Analysis

The Prison Litigation Reform Act of 1995 (PLRA) amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

2

remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Although once within the discretion of the district court, exhaustion in prisoner cases covered by § 1997e(a) is now mandatory. Porter v. Nussle, 534 U.S. 516, 524 (2002). All available remedies must now be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Id. (citation omitted). Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Id.; Booth v. Churner, 532 U.S. 731, 741 (2001). Similarly, exhaustion is a prerequisite to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 532. The PLRA exhaustion requirement requires "proper exhaustion" of available administrative remedies. Woodford v. Ngo, 548 U.S. 81, 93 (2006).

The State of California provides its prisoners the right to appeal administratively "any policy, decision, action, condition, or omission by the [CDCR] or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." 15 CCR § 3084.1(a).[1] In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal review, submitted on a CDC 602 inmate appeal form; (2) first formal level appeal, to an institution appeals coordinator; (3) second formal level appeal, to the institution warden; and (4) third formal level appeal, to the Director of the CDCR. See CCR § 3084.7; Brodheim v. Cry, 584 F.3d 1262, 1264-65 (9th Cir. 2009). A prisoner exhausts the grievance process when he completes the third level of review.

---

[1] Unless otherwise noted, all further references to code sections are to title 15 of the California Code of Regulations.

Harvey v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010).  An inmate's obligation to exhaust persists as long as some remedy is available; when that is no longer the case, the prisoner need not further pursue the grievance.  Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005).

### 1.    Exhaustion of Plaintiff's Tobacco-Related Claims

The parties do not dispute that the only inmate appeal relating to plaintiff's tobacco-related claims was the appeal filed by plaintiff on June 7, 2010, identified by Log Number CSQ 3-10-01030.  Defendants argue that plaintiff abandoned this appeal after it was cancelled at the third level due to plaintiff's failure to file within the 15-day time limit.[2]

The record shows that on June 7, 2010, plaintiff filed the above-referenced grievance regarding confiscation of ceremonial tobacco.  Doc. #6, Ex. A at 1-3. In his grievance, plaintiff requested that the confiscated tobacco be returned and that the CDCR make an exemption allowing American Indian inmates to use tobacco during religious ceremonies.  Id.  On July 9, 2010, plaintiff's grievance was denied at the first level of review.  Id. at 8.

On August 13, 2010, plaintiff appealed his grievance to the second level of review.  Doc. #6, Ex. A at 2-3.  On September 21, 2010, plaintiff's appeal was partially granted at the second level, and his grievance was referred to a Religious Review Committee.  Id. at 9-10.  On October 15, 2010, the Religious Review Committee determined that the CDCR had already established provisions for the use of tobacco products in Native American religious ceremonies, and denied

---

[2]  The regulations in effect in 2010 required an inmate to submit a grievance within fifteen working days of the event or decision being appealed. See CCR § 3084.6(c) (2010).  "Working days" are calendar days excluding Saturdays, Sundays, and official state holidays.  Id. § 4003(j)(2) (2010).

plaintiff's request for return of the confiscated tobacco.  Id. at 12-13.[3]  Plaintiff appealed his grievance at the third level, again requesting that the confiscated tobacco be returned and that Native American inmates be permitted to use tobacco for religious ceremony.  Id. at 15-16.  Plaintiff submitted his third level appeal on November 10, 2010.  Id. at 2.

On December 15, 2010, plaintiff's appeal was cancelled for failure to submit within fifteen working days of the decision being appealed as required by CCR § 3084.6(c) (2010).  Doc. #6, Ex. A at 18.  The cancellation notice advised plaintiff that he could challenge the cancellation decision and that his original appeal could be resubmitted if such challenge was granted.  Id.  Plaintiff did not challenge the cancellation.

Plaintiff first argues that his appeal was improperly cancelled as untimely due to a clerical error.  Doc. #6 at 11.  Plaintiff bases this argument on the clerical error that backdated the minutes of the Religious Review Committee hearing.  As explained above, however, all parties agree that the hearing took place on October 15, 2010.  Plaintiff filed the third level appeal on November 10, 2010, exceeding the limit of fifteen working days.

Even assuming there was a clerical error and that plaintiff's appeal was somehow timely, plaintiff could have disputed the cancellation by submitting a separate appeal.  Nothing in the record indicates that plaintiff took any action to challenge the cancellation.  Nor is there any indication that he was prevented from doing so.  In sum, administrative remedies remained available.

Plaintiff argues in the alternative that he is exempt from the exhaustion

---

[3]  While the written minutes of the hearing are date-stamped July 20, 2010, defendants state this was a typographical error and that the hearing actually took place on October 15, 2010.  K. Mitchell Decl. at ¶ 3.

5

requirement because his appeal was "partially granted" at the second level of review. Specifically, he asserts that the partial grant was a "victory," making it unreasonable to appeal further. See Opp. at 6

"An inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies." Harvey v. Jordan, 605 F.3d 681, 685 (9th Cir. 2010). In Harvey, the prisoner plaintiff filed a grievance, requesting a timely hearing on a disciplinary charge, and he received a decision granting him relief. See id. at 684-85. Five months later, having still received no hearing, the prisoner filed an appeal at the second level of review, which was rejected as untimely. See id. at 685. The Ninth Circuit concluded that the prisoner had indeed exhausted his claim, reasoning, "Once the prison officials purported to grant relief with which [the prisoner] was satisfied, his exhaustion obligation ended. His complaint had been resolved, or so he was led to believe, and he was not required to appeal the favorable decision." Id. The Court also explained, "Nor is it the prisoner's responsibility to ensure that prison officials actually provide the relief that they have promised." Id.

In contrast to Harvey, plaintiff did not obtain the relief he sought. Plaintiff's original grievance requested that the confiscated tobacco be returned to him and that Native American inmates be permitted to practice their religion by freely using ceremonial tobacco. The partially granted appeal did not award such relief. Instead, plaintiff was given a hearing before the Religious Review Committee, which determined that the current CDCR protocol already considered Native American religious needs and denied plaintiff's request for the return and use of the confiscated tobacco. Plaintiff was obviously dissatisfied with the result of the partial grant because he appealed to the third level of review and made identical requests for relief. This does not amount to the analogous

substantive relief found in Harvey.

Accordingly, the court finds plaintiff failed to properly exhaust remedies for his tobacco-related claims.

### 2. Exhaustion of Plaintiff's Retaliation and Cruel and Unusual Punishment Claims

The parties do not dispute that the only inmate appeals arguably relating to plaintiff's retaliation and cruel and unusual punishment claims were two staff complaints respectively filed on October 15, 2011 and November 1, 2011.  Doc. #6, Ex. C at 26-28.[4]  Defendants argue that plaintiff failed to exhaust these appeals because he never received a response at the third level of review. Plaintiff asserts these appeals were improperly screened out because the appeals coordinator and defendants conspired against him.

The record shows that on October 15, 2011, and November 1, 2011, plaintiff filed the two staff complaints at issue.  Doc. #6, Ex. C at 40, 42-43.  In the October 15, 2011 complaint, plaintiff stated that a correctional officer "has been harassing me . . . because I am in severe pain and cannot walk down the stairs to the lower yard, where I am assigned."  Id. at 40.  In the November 1, 2011 complaint, plaintiff stated that he had "appeared before [defendant] Foss concerning appeal log no. 10-01030 concerning religious use of tobacco" and requested that "Foss cease and desist from directing staff to harass me."  Id. at 42.

On December 9, 2011, SQSP rejected the complaints for failure to specify an act or decision related to the allegations.  Id. at 38.  The rejection letter stated that plaintiff could resubmit his grievance within thirty days.  Id.  Plaintiff resubmitted the grievances on December 22, 2011.  Id. at 40, 42-43.  On January 6, 2012, the grievances were rejected for being improperly submitted within

---

[4]  Because these grievances were ultimately screened out, as discussed below, they were not assigned Log Numbers.  See Doc. #6, Ex. C at 38.

7

fourteen days of each other.  Id. at 37.[5]  The rejection letter advised plaintiff that he "should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a)."  Id.  The letter further advised plaintiff that he could challenge the cancellation decision.  Id.  Plaintiff did neither.  Plaintiff filed the instant action on November 21, 2011, prior to receiving any of the rejection letters.

"[A]ffirmative actions by [prison] staff preventing proper exhaustion, even if done innocently, make administrative remedies effectively unavailable." Albino v. Baca, 697 F.3d 1023, 1034 (9th Cir. 2012) (footnote omitted). Accordingly, improper screening of a prisoner's administrative grievances may render administrative remedies "effectively unavailable" such that exhaustion is not required under § 1997e(a).  Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010).  To fall within this exception, however, the prisoner must show: "(1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations."  Id. at 823-24.

Plaintiff makes neither showing.  First, the lack of specificity in the grievances makes it unclear whether they correspond at all to the claims alleged in this action.  Further, plaintiff fails to show that prison officials screened out his grievances for reasons inconsistent with applicable regulations.  The rejection letters clearly explained that the reasons for rejection were: (1) the lack of

[5] Regulations in effect since January 28, 2011 provide for rejection of non-emergency grievances if two or more are submitted within fourteen days of each other.  See CCR §§ 3084.1(f), 3084.6(a), 3084.6(b)(3)

specificity and evidence supporting plaintiff's general allegations; and (2) plaintiff's failure to file within the required time frames.  These reasons are consistent with applicable regulations.  See CCR §§ 3084.1(f), 3084.6(a), 3084.6(b)(3), 3084.6(b)(6).  The second rejection letter also offered plaintiff the opportunity to resubmit and/or challenge the cancellation, and there is no indication that he took these actions or was prevented from doing so.  Rather, plaintiff filed the instant action almost immediately after filing the staff complaints.  In sum, plaintiff did not even attempt to exhaust administrative remedies before filing suit.

Accordingly, the court finds plaintiff failed to properly exhaust remedies for his claims asserting retaliation and cruel and unusual punishment.

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss for failure to properly exhaust available administrative remedies before filing suit, as required by 42 U.S.C. § 1997e(a) is GRANTED and the action is DISMISSED without prejudice.

The clerk shall enter judgment in accordance with this order and close the file.

This order terminates Docket No. 36.

SO ORDERED.

DATED:  March 25, 2013

CHARLES R. BREYER
United States District Judge

G:\PRO-SE\CRB\CR.11\Trevino, D.mtd.final.wpd